STATE of Iowa, Appellee,

v.

Robert Dean HILLESHIEM, Appellant.

No. 65133.

Supreme Court of Iowa.

May 13, 1981.

Rehearing Denied June 10, 1981.

James Burns and Marion L. Beatty of Miller, Pearson, Gloe, Burns & Beatty, Decorah, for appellant.

Thomas J. Miller, Atty. Gen., Julie F. Pottorff, Asst. Atty. Gen., and William S. Hart, Winneshiek County Atty., for appellee.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN and SCHULTZ, JJ.

McCORMICK, Justice.

Defendant Robert Dean Hilleshiem appeals his conviction by jury and sentence for murder in the second degree in violation of section 707.3, The Code. Most of his assignments of error concern rulings on evidence. We affirm the trial court.

On November 14, 1979, defendant was living in the Waukon home of Sue Mathis. He was alone in the home with Mathis' two-year-old daughter Jennifer Buege while Mathis was at work. During the afternoon Jennifer suffered injuries which caused her death two days later. Defendant was subsequently charged with murdering the child. This appeal arises from his conviction of that offense.

The State relied on evidence which tended to show defendant employed abusive methods in disciplining Jennifer on prior occasions. It also relied on testimony of physicians which tended to establish Jennifer's injuries resulted from a beating rather than from a fall down a carpeted stairway as alleged by defendant.

Defendant contends the trial court erred (1) in admitting hearsay, (2) in permitting impeachment of a witness on a collateral issue, (3) in allowing evidence concerning prior injuries, (4) in overruling defense objections to evidence relating to defendant's toilet training of Jennifer, (5) in refusing to exclude physicians' opinions concerning the cause of Jennifer's injuries, (6) in denying

him the right to read aloud from one of the doctors' depositions, (7) in overruling his motion for acquittal, (8) in instructing the jury on the included offense of voluntary manslaughter, and (9) in failing to enter a timely ruling on his motion in arrest of judgment.

■ I. *The hearsay issue.* Donna Schmidt, a State witness, was a friend of Mathis who frequently babysat with Jennifer. She testified about an allegedly deteriorating relationship between defendant and Jennifer during the few weeks defendant had lived in the Mathis home prior to Jennifer's death. Her testimony included the following:

Q. ... Mrs. Schmidt, tell me whether or not you ever heard conversation and statements by Jennifer Buege in the presence of the defendant as to the method of discipline that he used on Jennifer? A. Yes.

Q. Who was present at that time? A. Ellen Swan, Bob and I.

Q. And Jennifer? A. Jennifer.

Q. Where were you at? A. In the Mathis home, Sue's.

Q. What was said?

MR. BURNS: Objected to, hearsay, and all the reasons urged to the Court.

THE COURT: Overruled. You may answer.

A. Jennifer said Bobby beats me with a belt.

Q. What, if anything, was said by anyone else then? A. Bob held up his hand and said what do I hit you with?

Q. And what did Jennifer do or say at that time? A. She looked scared.

Defendant contends the court erred in overruling his hearsay objection.

If the hearsay rule can be found inapplicable here under any theory, the ruling will be upheld. *State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976). In the present case, the trial court believed, among other grounds, that the statement was admissible to show Jennifer was afraid of defendant. The court offered to admonish the jury that the evidence was not admitted to show the truth of the assertion but only to show Jennifer said it. Defense counsel rejected the offer, and no admonition was given.

We believe the ruling can be sustained on the ground the statement was admitted without reference to the truth or falsity of the matter asserted. *See State v. Leonard*, 243 N.W.2d 887, 890–91 (Iowa 1976). First, it was admissible as circumstantial evidence of the relationship between defendant and Jennifer. Second, it was admissible to provide the context for defendant's admission that he hit Jennifer with his hand.

Earlier, through cross-examination of Sue Mathis, defense counsel sought to demonstrate a warm, playful relationship between defendant and Sue's children. Among other things, Mathis said: "When we moved they played. They jump on him and stuff like that." Defendant acknowledges that the relationship between himself and Jennifer was a proper subject of inquiry. *See State v. Harrington*, 284 N.W.2d 244, 248 (Iowa 1979) ("evidence of motive which might be inferred from prior relationships between defendant and the victim"). He argues that Jennifer's statement was not admissible on this theory because it bore only on her attitude and not on defendant's *quo animo.* This argument, however, pertains to the relevancy of the evidence, not its character as circumstantial evidence. Without deciding whether a relevancy objection might otherwise have had merit, we believe the statement was admissible as circumstantial evidence which was fairly responsive to defendant's effort to show an affectionate relationship between defendant and Jennifer. *See State v. Pepples*, 250 N.W.2d 390, 393–94 (Iowa 1977).

In addition, it was admissible as part of "a reciprocal and integrated utterance between the two parties." *United States v. Metcalf*, 430 F.2d 1197, 1199 (8th Cir. 1970). Defendant's alleged response to Jennifer's statement was an admission that he hit her with his hand. No question exists about the admissibility of his statement. Yet his statement could not fully be understood out of context. Jennifer's statement was an essential component of the setting in which

defendant's statement was made. Statements of one party to a conversation may be admitted without regard to their truth or falsity in order to show the context in which admissible statements by another party were made. *See United States v. Kenny,* 645 F.2d 1323, 1339–1340 (9th Cir. 1981); *United States v. Ariza-Ibarra,* 605 F.2d 1216, 1224 (1st Cir. 1979); *United States v. Abrahamson,* 568 F.2d 604, 606 (8th Cir. 1978) (per curiam); *United States v. Lemonakis,* 485 F.2d 941, 948–49 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974); *cf.* 7 J. Wigmore, *Evidence* § 2094, at 595 (J. Chadbourne rev. 1978) ("To look at a part alone would be to obtain a false notion of the thought.").

We find no error in the ruling admitting the evidence of Jennifer's statement. Defendant also complains, however, of the failure of the court to give a limiting instruction. The record shows he rejected the court's proposed admonition and neither requested a limiting instruction nor objected to the court's failure to give one. Hence no error can be predicated on the court's failure to instruct the jury on the limited purpose for which the evidence was admitted.

■ II. *The impeachment issue.* Defendant called an ambulance to the Mathis residence to take Jennifer to the hospital on the afternoon she was injured. Sue Mathis was at her place of employment. After Jennifer's arrival at the Waukon hospital, a nurse called Mathis to request permission for Jennifer's transfer to a hospital in La Crosse, Wisconsin. Called as a State witness, Mathis' version of the conversation was as follows:

Q. Did she indicate Jennifer had been injured on that date? A. She just asked if they could transfer my daughter to La Crosse.

Q. Did she explain why? Did she indicate there were injuries? A. No. I asked her which one. She said Jennifer. I said yes, they could.

Q. Did you talk to anyone else at that time? A. To Bobby.

Q. The defendant, Bobby Hilleshiem? A. Yes.

Q. Do you remember the very first thing you said to Bobby on November 14, 1979, when he first picked up the phone? A. Yes. I asked him what happened to Jenny.

Q. Are those your words? A. Yes.

Q. Are you certain the words you used were not "Bobby, what did you do to her?" A. No.

Q. You are not certain? A. No, I asked him what happened to Jennifer.

Q. You are positive those are the words you used? A. Yes.

In an effort to impeach Mathis' version of her initial statement to defendant on the telephone, the State called the switchboard operator at Mathis' place of employment. The operator testified she overheard Mathis' side of the conversation. Defendant objected to her testimony on grounds of relevancy, materiality and the alleged collateral character of the impeachment. After the objection was overruled, she testified as follows:

Q. What was the first thing you heard Sue Mathis say to this person she referred to as Bob? A. She said, "Bob, what did you do to her?"

Q. Do you have any doubt that's what she said? A. No.

Defendant now asserts the trial court erred in admitting the evidence because its relevancy was greatly outweighed by its prejudicial impact and because it was an attempt to impeach a witness on a collateral issue. We do not reach his assertion of undue prejudice because he did not preserve error on it. *See State v. Mark,* 286 N.W.2d 396, 410 (Iowa 1979).

We find no merit in defendant's contention that the attempted impeachment addressed a collateral issue. Impeachment evidence is not collateral if it could have been admitted for any purpose independent of the contradiction. *State v. Gilmore,* 259 N.W.2d 846, 853 (Iowa 1977); *State v. Fowler,* 248 N.W.2d 511, 520 (Iowa 1976); *State v. Hill,* 243 N.W.2d 567, 571 (Iowa 1976). As noted in division I, defendant

acknowledges his relationship with Jennifer was a material issue in the case.

If Mathis' first question of defendant implied she believed he had injured Jennifer, the evidence would support the State's theory he was abusive in his prior discipline of the child. Because the relationship between defendant and Jennifer was material, evidence on that issue was not collateral. The impeachment evidence would have been independently admissible, although perhaps vulnerable to a hearsay objection. Thus it was permissible impeachment. *See Hill*, 243 N.W.2d at 571; *People v. Losey*, 98 Mich.App. 189, 201, 296 N.W.2d 601, 607 (1980).

The court did not err in overruling defendant's objection to the impeachment evidence.

■ III. *Evidence of prior injuries.* Jennifer had several bruises on her head and body which were not linked by evidence either to defendant or the cause of death. By pretrial motion in limine and objections at trial, defendant sought unsuccessfully to have evidence of these bruises excluded.

Defendant's principal objection to evidence of preexisting bruises concerned its relevancy. The evidence, however, was plainly relevant on the issue of Jennifer's condition at the time she was seen at the hospital on November 14. Determining her condition was essential for diagnosis and treatment. Her condition upon admission was also highly relevant in subsequently fixing the cause of death. In weighing the physicians' testimony, the jury was entitled to know Jennifer's entire condition, not merely the part of her condition which the physicians believed was directly related to her death. Otherwise the jury would have an incomplete and artificial view of her actual condition.

Defendant asserts the State offered the evidence in an effort to persuade the jury he was responsible for the preexisting injuries, but we do not find the evidence inadmissible as an improper attempt to adduce proof of other crimes. The prior injuries were circumstantial evidence bearing on defendant's relationship with Jennifer and the credibility of his version of the occurrence which led to her death. Even though Sue Mathis and defendant asserted the prior injuries were accidental, the jury was not required to take their testimony as a verity. It was entitled to weigh that evidence in deciding whether the fatal injuries were also accidental. *See State v. Tornquist*, 254 Iowa 1135, 1148–49, 120 N.W.2d 483, 489 (Iowa 1963). A similar issue was addressed in *Thiede v. People*, 159 U.S. 510, 518–19, 16 S.Ct. 62, 65, 40 L.Ed. 237, 242 (1895):

> The objection was that these witnesses did not connect the defendant with these appearances, or testify that he was the cause of them. It is true these matters do not constitute direct evidence of ill treatment, or a long-continued quarrel, but they are circumstances which, taken in connection with the testimony of what was seen and heard passing between the defendant and his wife, were fairly to be considered by the jury in determining the truth in respect thereto. Whether the relations between the defendant and his wife were friendly, or the reverse, was to be settled, not by direct or positive, but by circumstantial, evidence, and any circumstance which tended to throw light thereon might fairly be admitted in evidence before the jury.

We find no merit in defendant's contention that the evidence of prior injuries was inadmissible.

■ IV. *Evidence of toilet training.* Defendant contends the trial court abused its discretion in permitting testimony relating to defendant's harsh methods of toilet training Jennifer. Mathis testified defendant was the only person attempting to provide toilet training for the child. She said she told defendant she did not object if he rubbed Jennifer's dirty or wet pants in her face as a deterrent. Donna Schmidt testified defendant once directed her attention to Jennifer who was lying on a mattress rubbing her pants on her own face and crying. A D.C.I. agent who questioned defendant said defendant told him he disciplined Jennifer for problems encountered in

toilet training. The agent testified: "He indicated that he usually made her stand in a corner and that sometimes he would rub her wet pants in her face."

Defendant's version of Jennifer's fatal injuries was that she fell down a stairway within a few minutes of a bath he gave her after she had come to him with "messy pants." The State's evidence of harsh toilet training methods supported its theory that hostility existed between defendant and Jennifer. *See Tornquist*, 254 Iowa at 1148, 120 N.W.2d at 489. The basic test of relevancy is whether the challenged evidence makes the desired inference more probable than it would be without the evidence. *State v. Engeman*, 217 N.W.2d 638, 639 (Iowa 1974). A trial court has discretion to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Harmon*, 238 N.W.2d 139, 144 (Iowa 1976). Here the challenged evidence had probative value, and the trial court did not abuse its discretion in overruling defendant's relevancy objection.

■ V. *The physicians' opinions.* Defendant attacks the admissibility of opinions of three physicians who testified for the State. He objected to their opinions on foundational grounds and contends the trial court erred in overruling his objections. He also contends the court erred in overruling his objection to testimony of one of the doctors based on a violation of Iowa R.Crim.P. 5(3). The three doctors were Byron Annis, a neurosurgeon, Revelino M. Abellera, a pathologist, and Robert W. Huntington, a pathologist. All three witnesses testified that Jennifer's fatal injuries were not consistent with a fall down the stairway in the Mathis home. Doctors Annis and Abellera believed the injuries were caused by several severe blows to the head. Doctor Huntington believed the injuries were caused either by multiple blows to the head or by a violent and repeated shaking of the head by the hair.

A. *Dr. Annis' opinion.* Defendant alleges Dr. Annis was unqualified to say whether Jennifer's injuries were consistent with a fall down a stairway because he admitted he had only an educated layperson's ability to assess the age of bruises. Dr. Annis testified he took all of Jennifer's injuries into account without attempting to date her bruises. The point overlooked by defendant, however, is that the doctor attributed the cause of death to the severe head blows admittedly incurred on November 14. His opinion was based on his view that a fall down six carpeted steps onto a concrete basement floor would not be likely to cause such injuries. He said: "Based on my experience, somewhere in the neighborhood of 15 or 16 years of dealing with neurosurgical patients and large number of children, some of whom have sustained injuries falling down flights of stairs, and basements with concrete floors, through haychutes and so on and so forth, I think that it is unlikely that a fall down this flight of stairs would have resulted in the head injury I observed in the child."

Thus the doctor's opinion was not dependent on knowing the age of nonfatal injuries. It was based on the severity of the fatal injuries which occurred on November 14. He testified the age of the other injuries would not significantly affect his opinion. Under this record, the trial court did not abuse its discretion in overruling defendant's objection to Dr. Annis' opinion.

B. *Dr. Abellera's opinion.* Dr. Abellera's opinion was based on an autopsy of Jennifer's body. He did not rely on bruises. Rather he based his opinion primarily on the extensive, severe hemorrhage in the skull and brain. Like Dr. Annis, he said the age of bruises did not affect his opinion. His opinion was based on a perceived inconsistency between the severity of the November 14 fatal injuries and a fall down the Mathis stairway.

The trial court did not abuse its discretion in overruling defendant's objection to Dr. Abellera's opinion.

C. *Dr. Huntington's opinion.* Dr. Huntington was a pathologist on the faculty of the University of Wisconsin. Dr. Abellera sent him slides and other data from his autopsy and requested his evaluation. As a

result of his examination of these materials, he independently reached the same conclusion as the other doctors that Jennifer's injuries were not consistent with a fall down the Mathis stairway.

Defendant first attacks the failure of Dr. Huntington to consider the age of preexisting bruises. This criticism suffers from the same flaw as it does when leveled against the opinions of Doctors Annis and Abellera.

However, defendant also contends the court erred in refusing to exclude Dr. Huntington's opinion that the fatal injuries could have resulted from a violent shaking of the head. He asserts no evidence supported that possibility. He also asserts the testimony was beyond the scope of the minute of Dr. Huntington's testimony endorsed on the information. We find no merit in either assertion.

Dr. Huntington merely posited two possible methods by which Jennifer's injuries might have been inflicted. These methods contradicted defendant's version of the incident. This testimony was consistent with the State's theory that, in some way, defendant had caused the injuries. It was not necessary for the State, in aid of its circumstantial case, to prove precisely how defendant applied the lethal force which led to the child's death. Moreover, evidence was received that Jennifer's hair was broken and thin in certain areas. The jury could find this evidence lent credence to Dr. Huntington's opinion.

We also find that the minute of Dr. Huntington's testimony endorsed on the information contained a "full and fair statement of the witness' expected testimony" as required by Iowa R.Crim.P. 5(3). Even though the endorsement did not say the doctor would attribute Jennifer's fatal injuries to a possible violent shaking of the head, it did say he attributed the death to severe trauma. It also indicated he would testify the injuries were not consistent with a fall down the Mathis stairway. Minutes need not include each detail of a witness' expected testimony. Instead they are sufficient when they alert the defendant "generally to the source and nature of the evidence against him." *State v. Walker,* 281 N.W.2d 612, 614 (Iowa 1979). The minute of Dr. Huntington's testimony was sufficient under this standard.

The trial court did not err in overruling defendant's objections to Dr. Huntington's opinion.

■ VI. *The deposition issue.* Doctor David Nelson testified that he examined Jennifer upon her admission to the hospital in La Crosse. He said he noted she had patches of thin or missing hair with underlying redness of scalp. He admitted he could not say whether the hair had been pulled out or was simply thin and missing. In his admission report he referred to it as "lost" hair. In a pretrial deposition he testified, as he did at trial, that he could not say any hair had been pulled out by the roots.

Dr. Garry Peterson, a pathologist who testified for defendant, had reviewed Dr. Nelson's admission report, deposition, photographs and other medical information bearing on the issue. In his opinion the evidence concerning the pulling of Jennifer's hair was inconclusive. He persisted in that opinion despite cross-examination concerning Dr. Nelson's reference to "lost" hair in the admission report. On redirect examination defendant sought to introduce the portions of Dr. Nelson's deposition on which the witness relied. The court sustained the State's objection to this procedure, and defendant contends the court erred.

The court permitted defendant to question Dr. Peterson about his reliance on the deposition and the witness stated his understanding of the substance of Dr. Nelson's deposition testimony. Defendant argues he was entitled under sections 622.19 and 622.20 to read the relevant portions of the deposition into the record. He asserts the inquiry which was permitted was an inadequate substitute.

Section 622.19 is inapposite. It provides that when part of an "act, declaration, conversation, or writing" is introduced by one party the other party may introduce the whole on the same subject. Section 622.20

is closer to the present situation. It provides:

> When a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence.

These provisions are codifications of the principle of completeness discussed in 7 J. Wigmore, *supra*, at § 2094.

We believe the trial court would have acted within its discretion if it permitted defendant to read from Dr. Nelson's deposition during redirect examination of Dr. Peterson. However, because the substance of the deposition testimony was placed before the jury, and because Dr. Nelson's trial testimony was not materially different from his deposition testimony, we find no abuse of discretion in the court's ruling. Contrary to defendant's contention, we do not believe he was prejudiced by the procedure.

■ VII. *The motions for acquittal.* Defendant moved for acquittal at the conclusion of the State's evidence, at the close of all the evidence, and after the jury returned its verdict. Under Iowa R.Crim.P. 18(10)(a), the court "on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." Specifically defendant alleges the court erred in refusing to acquit him of first and second-degree murder. Of course his motion after verdict was not authorized by the rule.

Defendant and the State cite *State v. Marti*, 290 N.W.2d 570, 584 (Iowa 1980), in support of their positions. The State contends *Marti* proscribes an acquittal of a greater offense so long as sufficient evidence exists for submission of a case on a lesser included offense. Defendant contends *Marti* merely precludes termination of a prosecution by sustaining a motion for acquittal when sufficient evidence exists to

submit a lesser included offense. Defendant's reading of *Marti* is correct. *Id.*

Rule 18(10)(a) requires acquittal of any charge upon which the evidence is insufficient for jury submission. However, acquittal of a greater charge does not preclude submission in the same prosecution of an included offense upon which a jury issue exists. This is not a situation like *State v. Stergion*, 248 N.W.2d 911 (Iowa 1976), involving a subsequent prosecution after acquittal of an earlier charge. Sustaining defendant's motion for acquittal of the murder offenses would remove those offenses from the case but would leave for jury submission any lesser included offenses supported by sufficient evidence.

Nevertheless, we find no reversible error in the court's rulings in this case. Because the jury acquitted defendant of first-degree murder, we will not presume he was prejudiced by the trial court's prior refusal to do so. *State v. Sharpe*, 304 N.W.2d 220 (Iowa 1981). Nor has defendant shown he was prejudiced in fact in this case. Moreover, we find the evidence was sufficient for jury submission of second-degree murder. Applicable principles are explained in *State v. Harrington*, 284 N.W.2d at 247–48. Even though the evidence bearing on malice was circumstantial, it was sufficient for the jury to find defendant possessed the essential state of mind for second-degree murder.

We find no reversible error in the trial court's ruling on the motions for acquittal.

■ VIII. *Voluntary manslaughter.* Defendant contends the record lacked a factual basis for submission of the lesser included offense of voluntary manslaughter. Under section 707.4, The Code, voluntary manslaughter is a lesser included offense of murder. Before it can be submitted to a jury, however, it must pass the evidentiary test. *State v. Inger*, 292 N.W.2d 119, 122 (Iowa 1980).

We assume, without deciding, that the record would not support submission of the voluntary manslaughter charge in this case. Defendant's problem is that he was not harmed by the submission. When a defend-

ant is convicted of a greater offense, he usually cannot complain of the fact the jury was also permitted to consider his guilt of a lesser offense. *Everett v. Brewer*, 215 N.W.2d 244, 248 (Iowa 1974). Ordinarily the submission of lesser offenses is considered to be to a defendant's advantage. *State v. Bradford*, 219 Kan. 336, 344, 548 P.2d 812, 819 (1976). The case does not present the problem which required reversal in *State v. McCormack*, 293 N.W.2d 209 (Iowa 1980).

Even though defendant argues the submission constituted a suggestion that he must be guilty of something, we do not agree. We hold that the general rule is applicable. Defendant is not entitled to reversal on this ground.

■ IX. *The motion in arrest of judgment.* Iowa R.Crim.P. 23(3)(f) requires that a motion in arrest of judgment "shall be heard and determined by the court within thirty days from the date it is filed, except upon good cause entered in the record." Here the trial court ruled on defendant's motion in arrest of judgment eight days after expiration of the thirty days provided for in the rule.

The court postponed sentencing and consequently its ruling on the motion from May 15 to May 23 because of "other pending matters." Defendant contends this was not good cause under the rule. He alleges a violation of the rule is a denial of due process, and he asserts the judgment should be arrested as a sanction.

The time provision of the rule is intended to expedite disposition of criminal cases. No basis exists, however, for contending the thirty-day period, as opposed to a thirty-eight–day period, constitutes the perimeter of due process. Nonetheless, the rule plainly implements interests of the accused and the public in having prosecutions expeditiously concluded. *Cf. Taylor v. Department of Transportation*, 260 N.W.2d 521, 523 (Iowa 1977) ("Delay beyond the statutory period is unfortunate and not to be condoned."). However, unlike rule 27, no express sanction is provided for a violation.

Even assuming absence of good cause for the delay in the present case, we refuse to impose the drastic sanction of arresting judgment. Rule 23(3)(f) is similar to statutes which prescribe the time, form and mode of proceeding of public functionaries. "Such statutes direct the thing to be done at a particular time but do not prohibit it from being done later when the rights of persons are not injuriously affected by the delay." *Taylor*, 260 N.W.2d at 523. No injurious effect has been shown in this case.

We hold that the trial court's delay in ruling on the motion in arrest of judgment does not require reversal.

After considering all of defendant's contentions and arguments, whether or not specifically addressed in this opinion, we find no reversible error.

AFFIRMED.