**STATE of Iowa, Appellee,**

v.

**John Michael ANDERSON, Appellant.**

No. 65306.

Supreme Court of Iowa.

July 15, 1981.

William Wegman, Black Hawk County Public Defender, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

McGIVERIN, Justice.

John Michael Anderson appeals his conviction for first-degree sexual abuse in violation of sections 709.1–.2, The Code 1979. He alleges that several errors by the trial court require a new trial. We affirm the conviction.

In April 1978 Anderson rented a room in a home owned and occupied by an 85-year-old widow in Waterloo. Anderson was twenty-six and on probation. Shortly after moving in he came uninvited into the widow's living quarters at around 6:45 a. m. This frightened the woman and she called the police. After a conference with police and his probation officer, Anderson was persuaded to move to another house in Waterloo.

At approximately 4:00 a. m. on April 19, 1978, the widow called police to report that she had just been beaten and sexually abused. The victim immediately identified her attacker as Anderson. Police arrested him later that morning.

A trial information charged Anderson with first-degree sexual abuse. Defendant waived a jury and the matter was tried to the court, which found Anderson guilty. The court found that the victim had been sexually abused. Entrance to the victim's home was gained by breaking glass in a side door. In the process the assailant cut his hand and this resulted in fresh blood on the victim's bedding during the sexual abuse crime. A sample of the blood was compared to a sample of Anderson's blood. The two samples contained four identical genetic markers. An expert testified that the statistical frequency of these four markers appearing in a person was less than two in one hundred for Anderson's race, which is black.

Defendant was sentenced on May 31, 1979. §§ 709.2, 902.1. He appeals to us, raising the following issues:

I. Does this court have jurisdiction to hear the appeal and, if not, should a delayed appeal be allowed?

II. Is the phrase "substantial risk of death" as used to define serious injury unconstitutionally vague?

III. Was the evidence sufficient to support a finding of serious injury to the victim?

IV. Did the trial court abuse its discretion in denying defendant's motion for a lineup under section 810.2?

V. Was defendant denied his constitutional rights to confront witnesses and be present at trial when he was not present at a hearing on a motion to dismiss?

VI. Was defendant denied a right to have a speedy conclusion to his prosecution?

I. *Jurisdiction.* The first issue we must consider is whether this court has jurisdiction to hear the appeal. The parties have briefed the issue and defendant has also filed an application to treat his direct appeal, if untimely, as a delayed appeal. We grant the application for a delayed appeal.

The problem in this case is to determine the correct procedure to perfect an appeal where, within sixty days after final judgment, defendant filed a timely motion for a new trial based on newly discovered evidence, but did not file a notice of appeal from the final judgment until after the ruling on the motion. The ruling on the motion for new trial was beyond sixty days from the final judgment. A review of the facts will assist in illustrating the problem.

On May 31, 1979, judgment of guilty of first-degree sexual abuse was entered against defendant. New counsel was appointed to handle the appeal. He had sixty days—until July 30, 1979,—to perfect an appeal. § 814.4, The Code. On July 16, 1979, counsel made a timely postjudgment motion for a new trial based on newly discovered evidence. The motion was overruled on June 6, 1980, and on July 10, 1980, defendant filed his only notice of appeal. From this set of facts we must determine the consequences for our appellate jurisdiction. Our problem is with jurisdiction over an appeal from the May 31, 1979, judgment. Of course, an appeal from the June 6, 1980, denial of the motion for new trial would have been timely. § 814.4; Iowa R.Crim.P. 23(4)(c).

The May 31, 1979, judgment of guilty, which sentenced defendant to life in prison, was an appealable final judgment. *State v. Clayton,* 217 N.W.2d 685, 687 (Iowa 1974). The manner of taking an appeal in a criminal case is governed by statute. Iowa R.App.P. 101. A defendant has sixty days from the entry of final judgment to take an appeal. § 814.4. In this case, sixty days from the May 31 final judgment was July 30, 1979. § 4.1(22).

Within sixty days of May 31 defendant's lawyer discovered new evidence that indicated that a defense of diminished responsibility could possibly have been raised at trial. *See State v. Collins,* 305 N.W.2d 434 (Iowa 1981). He wanted to get defendant a new trial. Under our rules, a motion for a

new trial based on newly discovered evidence could be made anytime within two years after final judgment. Iowa R.Crim.P. 23(2)(a), (b)(8).

At this point, defendant's lawyer faced a dilemma. If he filed a notice of appeal from the May 31 judgment, he would protect his right to appeal. However, the filing of a notice of appeal would extinguish the trial court's jurisdiction to rule on his postjudgment motion for a new trial. *State v. Williams*, 285 N.W.2d 248, 266 (Iowa 1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980); *Cleesen v. Brewer*, 201 N.W.2d 474, 476 (Iowa 1972). *But see State v. Gatewood*, 179 N.W.2d 520, 521 (Iowa 1970). On the other hand, if he filed his new trial motion, the sixty days for appealing the May 31 judgment might run before the court ruled on the motion. On July 16, 1979, he decided to file the motion for a new trial and did not file a notice of appeal from the May 31 judgment before July 30, 1979.

Unfortunately, our statutes and rules do not cover the procedure for perfecting an appeal in a criminal case where, prior to the expiration of the appeal period, a timely postjudgment motion is filed. This problem does not arise often because most motions for a new trial or to arrest judgment in a criminal case are made before final judgment. Iowa R.Crim.P. 23(2)(a), (3)(b). *But see State v. Boone*, 298 N.W.2d 335 (Iowa 1980). In civil cases, the rules cover this situation. For example, when a timely motion for a new trial is made after judgment in a civil case the time to appeal does not begin running until a ruling on the motion. Iowa R.App.P. 5(a).

■ We conclude that section 814.4 required defendant to file his notice of appeal from the May 31 judgment within sixty days, regardless of whether a timely postjudgment motion was filed during that time. Unlike civil cases, there is no express provision for tolling the appeal period in a criminal case until after a ruling on the postjudgment motion for new trial based on alleged newly discovered evidence.

We are aware that some of our cases have allowed a criminal appeal within sixty days after a ruling on a postjudgment motion. *Boone*, 298 N.W.2d at 337; *State v. Gillespie*, 271 N.W.2d 686, 688 (Iowa 1978). Unlike Anderson's case, these cases involved guilty pleas where a postjudgment motion was required before taking an appeal. *Gillespie*, 271 N.W.2d at 688. There was also an identity of issues between those raised in the postjudgment motion and those raised on appeal. In Anderson's case, he was not required to make his new trial motion before appealing and the issues he seeks to raise here are not related to the issue of newly discovered evidence raised in his postjudgment motion.

Defendant contends that our reading of the statutes and rules will result in multiple appeals. That is, under our holding today, he claims he would have to file a notice of appeal within sixty days from the May 31 judgment, and after that appeal was decided, get a ruling on his new trial motion. He then would have to take another appeal if dissatisfied with the ruling on the motion. He urges us, in effect, to apply Iowa R.App. 5(a) on civil cases to criminal appeals and toll the running of the appeal period until there is a ruling on postjudgment motions made within the time to appeal. We decline to do so.

Since a new trial motion based on newly discovered evidence in a criminal case may be filed anytime within two years after final judgment, Iowa R.Crim.P. 23(2)(b)(8), it is quite possible to have two appeals—the first from the final judgment and the second from a denial of the new trial motion. We decline to adopt by judicial fiat a rule tolling the appeal period when a postjudgment motion is filed within the appeal period from the final judgment.

In addition, the problem of the possibility of two appeals may easily be handled in these cases. For example, defendant could have filed a timely notice of appeal from the May 31 judgment and also asked this court to grant a limited remand to allow the trial court to rule on the timely postjudgment motion. If the postjudgment mo-

tion were denied and defendant sought to appeal that ruling, we could consolidate it with the appeal from the final judgment. This procedure would follow the statutes and eliminate the need for us to judicially prescribe a rule here.

■ Finally, we must comment on another matter. Defendant's lawyer was aware of the appellate jurisdiction problems in this case. To protect his right to appeal, he requested and received an order from the trial court "staying" the time for taking an appeal. This order has no effect. The parties to a case or a trial court ordinarily cannot determine the jurisdiction of this court. *Boone*, 298 N.W.2d at 336; *Hollister Convalescent Hospital, Inc. v. Rico*, 15 Cal.3d 660, 666, 542 P.2d 1349, 1354, 125 Cal.Rptr. 757, 762 (1975); 4 Am.Jur.2d *Appeal and Error* § 293 (1962); *see* Iowa R.App.P. 20.

■ Defendant has also filed an application to treat his appeal as a delayed appeal. We ordered that the application be submitted with the appeal. Ordinarily the failure to take a criminal appeal within the specified time limits requires dismissal for lack of jurisdiction. *Cleesen v. State*, 258 N.W.2d 330, 332 (Iowa 1977). We have, however, granted applications for a delayed direct appeal where a defendant "has made a good faith effort to perfect his appeal and has directed his attorney to proceed therewith but due to a technical irregularity the appeal was either filed late or notice was improperly served." *Id.* The decision is for this court to make and depends on the circumstances of each case. *Horstman v. State*, 210 N.W.2d 427, 430 (Iowa 1973); *Cleesen v. Brewer*, 201 N.W.2d at 476.

In Anderson's case, the court notified him at sentencing of his right to appeal. Iowa R.Crim.P. 22(3)(e). Anderson expressed his intention to appeal and the court appointed appellate counsel. *Id.* 22(3)(f). The court also directed Anderson's trial counsel to file a notice of appeal. Under these circumstances, we conclude that defendant has made a good faith effort to appeal and at all times clearly intended to appeal. We therefore grant the application for delayed appeal. *Horstman*, 210 N.W.2d at 429; *State v. Wetzel*, 192 N.W.2d 762, 764 (Iowa 1971).

II. *Constitutionality of section 702.18.* Anderson contends that the definition of serious injury in section 702.18—"bodily injury which creates a substantial risk of death"—is unconstitutionally vague. He says that this definition is facially invalid because it denies due process. U.S.Const. amend. XIV; Iowa Const. Art. I, § 9. This issue was properly raised in a pretrial motion to dismiss. *State v. Allen*, 304 N.W.2d 203, 206 (Iowa 1981); Iowa R.Crim.P. 10(2).

Principles guiding our review of the facial validity of criminal statutes are summarized in *State v. Sullivan*, 298 N.W.2d 267, 270–71 (Iowa 1980). Anderson "carries the heavy burden to rebut a strong presumption of constitutionality." *Id.* at 270. He has not met that burden.

■ To survive a due process vagueness attack, a penal statute must "give a person of ordinary intelligence fair notice of what is prohibited" and "provide an explicit standard for those who apply it." *State v. Pierce*, 287 N.W.2d 570, 573 (Iowa 1980). In his brief, Anderson narrows his attack to the second requirement. He claims that by defining serious injury as one posing a "substantial risk of death," the legislature has not provided a trier of fact with any standards to apply. Using this definition, he claims two different triers of fact could arrive at two different conclusions based on the same facts. We conclude that the phrase "substantial risk of death" is sufficiently specific for the trier of fact.

■ The specificity required of a statute need not be apparent on its face. *Sullivan*, 298 N.W.2d at 270. We may look to prior decisions, the dictionary and common usage. *Id.* We have already stated since Anderson's trial that serious injury, including those injuries posing a substantial risk of death, denotes a greater injury than the pain or injury included in the definition of assault in section 708.1(1). *State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981). The word "substantial" is defined in the dictionary

and generally means real, important, not illusive. *Webster's Third New International Dictionary* 2280 (1976); *see Smith v. City of Fort Dodge*, 160 N.W.2d 492, 497–98 (Iowa 1968). This is also the ordinary usage of the word. *Cf. State v. Graham*, 203 N.W.2d 600, 603 (Iowa 1973) ("improperly" is sufficiently defined by ordinary usage). The statute sufficiently informs the jury of the general types of injuries that are required to find a person guilty of first-degree sexual abuse.

III. *Sufficiency of evidence of serious injury.* To convict a person of first-degree sexual abuse, the trier of fact must conclude that "in the course of committing sexual abuse the person causes . . . serious injury." § 709.2. Anderson contends that the evidence is insufficient to support the finding by the trial court of serious injury to the victim.

Serious injury is defined in section 702.-18.[1] To establish that Anderson inflicted serious injury on the victim, the State tried to prove that the victim's injuries created "a substantial risk of death."

The parties disagree over the meaning of the phrase "a substantial risk of death." Defendant's brief asserts that the victim must be "likely to die." The State argues that the element is established upon a showing that the victim faces "a real possibility of loss of life" even if it is not probable that death will occur.

■ As stated in division II, serious injury means something more than the "pain or injury" element in the assault statute, section 708.1(1). *Welton*, 300 N.W.2d at 160. We conclude that a substantial risk of death means more than just any risk of death but does not mean that death was likely. If there is a "real hazard or danger of death," serious injury is established. *II Iowa Uniform Jury Instructions*, No. 219 (1978). We adopt the definition of substantial risk of death stated in the uniform instruction. *See State v. Whiteside*, 272 N.W.2d 468, 471 (Iowa 1978).

In reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to the State. *State v. Holderness*, 293 N.W.2d 226, 235 (Iowa 1980). Evidence is sufficient if a rational trier of fact could find guilt beyond a reasonable doubt. *State v. Jones*, 289 N.W.2d 597, 600 (Iowa 1980).

Testimony about the extent of the victim's injuries came primarily from Drs. Jacobi and Otte. The victim was an 85-year-old woman described as being "frail" and "not a well woman" prior to the sexual abuse. She had arthritis and hardening of the arteries. During the attack she suffered two broken ribs and several bruises, including those resulting from a beating to her head. The beating to her head was severe enough that one doctor "expected a facial fracture" but X rays revealed none. She also suffered minor lacerations and was hospitalized for ten days, partly because of her age and agitated emotional state.

■ Specifically addressing the risk of death faced by the victim, a doctor testified that death of this victim from these injuries was "certainly possible." Although death was not certain or expected, there was a threat to her life even if not a "major risk." After cautioning that there was no scientific basis for an estimate, Dr. Otte testified that there was a ten percent chance of death. Each case involving alleged "serious injury" must be determined by its own particular facts. *Welton*, 300 N.W.2d at 161. A rational trier of fact could conclude from the evidence that a substantial risk of death existed for the elderly victim here.

IV. *Denial of motion for lineup.* Two days before trial, Anderson requested that a lineup be conducted to see if the victim could identify him. The trial court denied the motion and Anderson claims this was reversible error.

Defendant is not claiming that he had an absolute constitutional or statutory right to

---

1. Section 702.18 provides:
    *"Serious injury"* means disabling mental illness, or bodily injury which creates a substantial risk of death or which causes serious

permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

a lineup upon request. Rather he contends that the trial court erred in denying his request under section 810.2, The Code. That section allows a person who has been arrested or charged with a crime to request nontestimonial identification procedures, including lineups. It provides that "[i]f it appears that the results of [the lineup] will be of material aid in determining whether the defendant committed the offense, the judge shall order [the lineup]."

Section 810.2 affords a defendant a procedure to secure a lineup even if authorities refuse to conduct one. *State v. Marti*, 290 N.W.2d 570, 587–88 (Iowa 1980); 4 J. Yeager and R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 921 (1979). The procedure was taken from the 1971 proposed additions to the Federal Rules of Criminal Procedure. 4 J. Yeager and R. Carlson, *supra.* This is the first case where we must review the propriety of a trial court's denial of a request for a lineup under section 810.2. We note that ch. 810 has been amended since this trial. 1981 Session, 69th G.A., S.F. 528.

The decision whether to grant a defendant's request for a pretrial lineup is for the trial court's sound discretion. *See United States v. Robertson*, 606 F.2d 853, 857 (9th Cir. 1979); *United States v. Estremera*, 531 F.2d 1103, 1111 (2d Cir. 1976), *cert. denied*, 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 804 (1976). Under section 810.2, the trial court's discretion is guided by the requirement that the lineup be ordered if it will "be of material aid in determining whether the defendant committed the offense." In making this determination, the trial court may properly consider the adequacy and propriety of other identifications, the time between the crime and the request for a lineup and changes in the accused's appearance. *Estremera*, 531 F.2d at 1111; *United States v. Ravich*, 421 F.2d 1196, 1203 (2d Cir. 1970), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); *In re W. C.*, 85 N.J. 218, 226–27, 426 A.2d 50, 55 (1981).

In Anderson's case, we do not find an abuse of the trial court's discretion in refusing his request for a lineup. The trial court could have reasonably concluded that, in light of the blood tests and the positive identification of Anderson by the victim shortly after the crime, a lineup seven months later would not materially aid in determining if he committed the offense. There is no indication why the request was not made until two days before the trial, and over seven months after the offense. Motions under section 810.2 should be made as soon as possible after arrest or initial appearance. *See Evans v. Superior Court of Contra Costa County*, 11 Cal.3d 617, 626, 522 P.2d 681, 687, 114 Cal.Rptr. 121, 127 (1974) ("motions [for lineups] which are not made until shortly before trial, should, unless good cause is clearly demonstrated, be denied in most instances").

We hold trial court did not err in denying defendant's motion for a lineup under this record.

V. *Presence at hearing.* On November 27, 1978, two days before trial, defendant filed two written motions with the court. The first motion was in two divisions and asked that defendant be allowed to take a lie detector test and participate in a lineup. The second motion, in three divisions, was a motion to dismiss. It raised three legal issues.

On the day the motions were made, the judge granted the motion for a lie detector test. The judge had a second part to the ruling that would have granted the motion for a lineup, but it was crossed out. There was no ruling before trial on the motion to dismiss.

On the third day of trial, the court held a hearing in its chambers. Defendant was not present. His attorney purportedly waived on the record Anderson's right to be present. We need not decide if this waiver was effective. At the hearing, which lasted fifteen minutes, no argument was heard on the motion for a lineup. The court simply made it clear to counsel that the portion of the first motion requesting a lineup had been overruled. The court then heard argument from counsel on the motion to dismiss. The argument consisted solely of a

statement of positions on questions of law. At the end of the hearing, the court overruled the motion to dismiss.

Defendant contends that the hearing without him violated his constitutional right to confront witnesses. U.S.Const. amend. VI; Iowa Const. art. I, § 10. He also says that the hearing violated his due process right to be present and defend the charge against him. U.S.Const. amend. XIV; Iowa Const. art. I, § 9. We do not find merit in his arguments. These contentions are not based on the rules of criminal procedure pertaining to a defendant's presence during criminal proceedings. *See generally, State v. Hemminger*, 308 N.W.2d 17 (Iowa 1981); *State v. Dreesen*, 305 N.W.2d 438, 440 (Iowa 1981); Iowa R.Crim.P. 25.

The sixth amendment right to confront witnesses is basically a trial right. *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968). It was designed to prevent convictions by affidavit and to afford the accused an opportunity "to test the recollection of the witness in the exercise of the right of cross-examination." *Dowdell v. United States*, 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753, 757 (1911). The sixth amendment is applicable to the states through the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Additionally, an accused has a due process right in a felony prosecution to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674, 678 (1934); *State v. Gruber*, 281 N.W.2d 636 (Iowa 1979).

In Anderson's case, the hearing during trial was not a hearing on the motion for a lineup. During trial, the court merely exercised its right to clarify an earlier ruling which overruled the motion for a lineup. *See Thiele v. Whittenbaugh*, 291 N.W.2d 324, 329 (Iowa 1980). There had not been, however, any prior ruling on the motion to dismiss. The question before us, therefore, is whether defendant's constitutional rights were violated by the hearing on the motion to dismiss without his presence.

The motion to dismiss was a pretrial motion. Iowa R.Crim.P. 10(2)(a). In this case, it involved only questions of law. No evidence was taken and no testimony from witnesses was heard. Therefore, defendant was not denied an opportunity to confront witnesses. We do not find a violation of defendant's constitutional rights to confrontation and due process. We have said that due process may require a defendant's presence at a hearing on a motion in arrest of judgment involving disputed issues of fact. *Gruber*, 281 N.W.2d at 639. Ordinarily, however, a defendant is not constitutionally entitled to be present at hearings only involving questions of law. *See Johnson v. United States*, 318 U.S. 189, 201, 63 S.Ct. 549, 555, 87 L.Ed. 704, 714 (1942) (even if trial court improperly excluded defendant from argument on question of law, no prejudice); *Gruber*, 281 N.W.2d at 638 (citing cases); Fed.R.Crim.P. 43(c)(3); Annot., 85 A.L.R.2d 1111 § 4 (1962).

Although we do not find a violation of constitutional rights, it does not mean we approve of conducting the hearing without defendant's presence. No reason appears why defendant could not have easily been allowed to attend a hearing on a pretrial motion held during the trial. "Every reasonable accommodation should be made to insure that defendants receive, not only the process to which they are constitutionally due, but also that process which will serve to dispel their suspicions as to the integrity of our legal system." *State v. Orozco*, 290 N.W.2d 6, 9 (Iowa 1980).

VI. *Speedy conclusion of the prosecution.* Defendant contends he was denied his right to a speedy conclusion of his prosecution by the trial court's delay of over ten months in ruling on his motion for new trial. He asserts violations of various rights under Iowa R.Crim.P. 27(2), relating to speedy disposition of criminal cases, and his due process rights under U.S.Const. amends. V and XIV.

The court's findings and conclusion of defendant's guilt were filed on April 18,

1979. Judgment and sentence were entered on May 31. After final judgment, defendant changed attorneys. His new counsel on July 16 timely filed a motion for new trial, Iowa R.Crim.P. 23(2)(a), (b)(8), on the basis of alleged newly discovered evidence raising an issue of diminished responsibility. This motion, previously referred to in division I, was overruled on June 6, 1980. Defendant says that the delay in the ruling on the new trial motion denied a right to speedy conclusion of his prosecution.

 Anderson does not cite or rely on Iowa R.Crim.P. 23(2)(e), which provides "A motion for new trial shall be heard and determined by the court within thirty days from the date it is filed, except upon good cause entered in the record." The trial court clearly did not comply with the rule. However, as stated in *State v. Hilleshiem*, 305 N.W.2d 710, 718 (Iowa 1981), involving the same language in Iowa R.Crim.P. 23(3)(f), no express sanction is provided for a violation of the rule. The record does not show that defendant requested a speedy ruling on the motion for new trial or that he was prejudiced by the delay. *See State v. Zaehringer*, 306 N.W.2d 792, 795–96 (Iowa 1981). Therefore, we impose no sanction under this record.

 Defendant also did not move to dismiss on the basis of a denial of a due process right to a speedy conclusion of the case. Because this contention was never presented to the trial court, we will not consider it here. *State v. Paulsen*, 293 N.W.2d 244, 247 (Iowa 1980); *State v. Washington*, 257 N.W.2d 890, 895 (Iowa 1977), *cert. denied*, 435 U.S. 1008, 98 S.Ct. 1881, 56 L.Ed.2d 390 (1978).

There is no merit in this assignment.

Because we find no reversible error, the case is affirmed.

AFFIRMED.