**STATE of Iowa, Appellee,**

v.

**John Martin COBURN, Appellant.**

**No. 63551.**

Supreme Court of Iowa.

Feb. 17, 1982.

J. F. M. Samore of Samore & Samore, Sioux City, for appellant.

Thomas J. Miller, Atty. Gen., Roxann Ryan, Asst. Atty. Gen., and Patrick C. McCormick, Woodbury County Atty., for appellee.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN, and LARSON, JJ.

LeGRAND, Justice.

Defendant was tried to a jury on the charge of having committed sexual abuse in the first degree upon the person of a ten-year-old girl in violation of section 709.2, Code Supp.1977. He was convicted and sentenced to life imprisonment in the penitentiary. He appeals, and we affirm the trial court.

Defendant, forty-two years old at the time of the crime, was living with the victim's mother. Both of them had serious drinking problems. On the night in question, defendant was home alone with the victim while her mother was drinking heavily at a local tavern. The events leading up to the crime, which we find it unnecessary to detail, occurred during this period. Suffice it to say, defendant showed the young girl some "dirty pictures", had her undress, and forced her to perform acts of sexual intercourse and sodomy.

Defendant raises the following issues as grounds for reversal:

1) Error in the admission of evidence.

2) Error in holding there was substantial evidence that the victim suffered serious injury.

3) Denial of a fair trial because of the "overwhelming likelihood" that the State designedly overheard conferences between defendant and his attorney.

4) Denial of defendant's motion to depose certain State's witnesses.

5) Error in selection of the jury.

## I. *Evidentiary Rulings.*

### a) *Inculpatory Statements Made in New Mexico.*

Defendant was apprehended in New Mexico. He waived extradition, and two Sioux City policemen went to New Mexico to return him to Iowa for prosecution. One of the officers, Russell White, Jr., interviewed defendant in the Alamogordo sheriff's office. Defendant objected to the use of the information obtained in this interview, but we find no error in its admission.

Before talking with defendant, White gave him the *Miranda* warnings. Defendant then signed a written waiver, which is here set out:

### WAIVER OF RIGHTS

I have read the above Warning Statement advising me of my legal and Constitutional Rights and I understand what my Rights are. I have been given the opportunity to use a telephone to call an attorney or a member of my own family. I am willing to answer questions and make a Statement. I do this voluntarily and of my own free will. I understand and know what I am doing. I do not want to call or consult with a lawyer and I do not want a lawyer to be present to advise me of my rights and with whom I can consult. No promises of immunity or other promises of any kind have been made to me and no physical force or pressure of any kind has been used against me to cause me to make a Statement.

■ The burden of proof is on the State, which must establish by a preponderance of the evidence that the defendant "had a full knowledge of his constitutional rights and knowingly, intelligently and voluntarily relinquished them...." *State v. Jump,* 269 N.W.2d 417, 424 (Iowa 1978). The test of voluntariness is whether the defendant's will was overborne by the police officers. *State v. Hartman,* 281 N.W.2d 639, 644 (App.1979) and cases cited. In resolving this question, we consider the totality of the circumstances. *Id.; State v. Jump,* 269 N.W.2d at 426; *State v. Swanson,* 228 N.W.2d 101, 105 (Iowa 1975). Some of the factors to be taken into account are age, intelligence, education, awareness of the alleged crime, and apparent ability to understand his constitutional rights and the consequences of waiving them.

■ At the time of the interview, Coburn was forty-two years old. He had obtained a general equivalent (high school) diploma in military service and had received an honorable discharge after a total of ten years in the army. Since his discharge, defendant had worked as an electrician, a bartender, and a meat packer. While in jail in New Mexico, he was neither mistreated nor isolated; he was provided counsel for extradition discussions; and the questioning by Officer White was not prolonged.

There is nothing in the record to suggest defendant was unfairly imposed upon by Officer White or that he did not fully understand the rights he was forfeiting by signing the Waiver of Rights.

### b) *Inculpatory Statement During Airplane Flight.*

■ Defendant also challenges the use of the statement he made during the airplane flight from New Mexico to Iowa. Defendant said he "didn't sleep very well" because of what he did and that he wanted Officer White to know he "never meant to hurt that little girl." Without deciding if the *Miranda* warnings originally given would apply to this statement, we hold it was admissible as a volunteered statement not made in response to interrogation. The evidence shows there was no attempt to question defendant at any time during the flight. On the contrary, Officer White discouraged any conversation concerning the crime. *See State v. Beatty,* 305 N.W.2d 496, 499 (Iowa 1981); *State v. Matlock,* 289 N.W.2d 625, 627–28 (Iowa 1980).

Defendant attempts to bring this case within *Rhode Island v. Innis,* 456 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1981) and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct.

1232, 51 L.Ed.2d 424 (1977), to convince us the inculpatory statement was the result of "subtle compulsion" which was the "functional equivalent" of interrogation. The significant circumstances of those cases are entirely lacking here. Unlike *Innis* and *Williams*, there was no request for an attorney by this defendant until after the statements had been made. Neither was there anything here akin to the "Christian burial" speech in *Williams*.

The statement made on the flight back to Iowa did not result from "subtle compulsion," as defendant claims, and there was no error in admitting it.

c) *Admission of Photographs.*

Defendant argues the admission of photographs was error because they were "grisly and gruesome" and served only to inflame the jury without any probative value as a balancing factor. The trial court allowed them to come in, ruling they were "probative of the matter of serious injury" which "outweighs the potential prejudice."

 Of course, the photographs were grisly and gruesome, but this does not render them inadmissible. *State v. Seehan,* 258 N.W.2d 374, 378 (Iowa 1977). The admission or rejection of photographs is determined by their relevancy. *State v. Fuhrmann,* 257 N.W.2d 619, 624 (Iowa 1977). The relevancy test was easily met by the testimony of Dr. Boggs, the State's expert, who said that the photographs were a "fair and accurate depiction" of the victim's condition and that they were necessary to aid him in explaining and illustrating the nature and extent of the injury. Furthermore we agree that the probative value of the pictures on the issue of serious injury outweighed any possible prejudice.

We find no error in the admission of the photographs.

d) *Admission of Victim's Written Statement.*

At one point during the interview in the Alamogordo county jail, defendant, according to Officer White, put both his elbows on his knees, cupped his face with his hands and said, "I never meant to hurt her. I'm going to jail for fifty years."

To explain why, and the circumstances under which, this statement was made, Officer White was permitted to read to the jury a written statement the victim had made describing defendant's criminal conduct.

The State offered the statement to explain defendant's verbal response and physical reaction when confronted with the victim's version of what had occurred. The trial court cautioned the jury to consider this evidence only as it tended to explain what defendant said and did, not as the truth of what was said. A similar cautionary instruction was given when the case went to the jury.

The admission of this statement was resisted by motion in limine prior to trial, by timely objection at trial, by motion for mistrial, and in defendant's motion for a new trial. Defendant's objections were more general than specific, but we believe the principal basis for complaint was the argument that the statement was hearsay.

 When an out-of-court statement, otherwise hearsay, is admitted, not to show the truth of what was said, but to explain responsive conduct, it is not regarded as hearsay. *State v. Hilleshiem,* 305 N.W.2d 710, 712–13 (Iowa 1981); *State v. Nowlin,* 244 N.W.2d 596, 600 (Iowa 1976); *State v. Rush,* 242 N.W.2d 313, 319 (Iowa 1976).

 In allowing the statement for limited purposes, the trial court found it was substantially consistent with the prior testimony of the victim; the explicit cautionary instruction sufficiently protected defendant; and "the probative value of the evidence outweighs the prejudice to the defendant, which the court finds to be de minimis."

The conclusions reached in *Hillshiem, Nowlin,* and *Rush* support the trial court's ruling here. Defendant's verbal and physical responses during the Alamogordo interview lose much of their meaning and impact without showing the context in which

they took place. The circumstances attending this matter are similar to those in *State v. Hilleshiem*, where we said:

Defendant's alleged response to [the victim's] statement was an admission that he hit her with his hand. No question exists about the admissibility of his statement. Yet his statement could not fully be understood out of context. [The victim's] statement was an essential component of the setting in which defendant's statement was made. Statements of one party to a conversation may be admitted without regard to their truth or falsity in order to show the context in which admissible statements by another party were made.

305 N.W.2d at 712–13 (citations omitted).

Defendant counters by arguing this rule should not be applied in the present case because the prejudice resulting from this evidence was so grave and so pervasive that its admission did him irreparable harm. He says no cautionary instruction could possibly minimize its effect. The statement was detailed and specific, but it did not differ materially from the victim's testimony at trial. Thus it did not put before the jury any facts not already in the record. It did, however, as defendant argues, emphasize the victim's version. Defendant says it was error to admit the statement, even for a limited purpose, because its potential for prejudice outweighed its probative effect. *See State v. Wallace*, 259 Iowa 765, 770–72, 145 N.W.2d 615, 618–19 (1966). This was addressed by the trial court in deciding to admit the statement with an appropriate cautionary instruction. There was no abuse of discretion in this ruling.

 Defendant also objects because the statement was allowed to go to the jury with other exhibits, although the trial court had earlier indicated it would be withheld from the jury during its deliberations. In final argument, however, defendant sought to persuade the jury that references throughout the statement did not necessarily point out defendant as the guilty person because the victim repeatedly used the pronoun "he" without specifying to whom she referred. The trial court then ruled the statement should go to the jury room to permit the jury to decide from the context whether the victim had identified defendant as the guilty party.

Ordinarily the jury may take all exhibits received in evidence "except as otherwise ordered." Iowa R.Civ.P. 198. The trial court has discretion to decide if any exhibits should be withheld. *Mongar v. Barnard*, 248 Iowa 899, 910, 82 N.W.2d 765, 772–73 (1957).

We find no error either in the admission of the statement or in allowing the jury to have it during their deliberations.

## II. *Evidence of Serious Injury to the Victim.*

 One of the elements of sexual abuse in the first degree is that the victim has suffered "serious injury." Section 709.-2, Code Supp.1977. Defendant asserts there is no substantial evidence that the victim suffered a serious injury. Section 702.18, Code Supp.1977, defines serious injury in part as a "bodily injury which creates substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

We recently considered this statute in *State v. McKee*, 312 N.W.2d 907 (Iowa 1981) and *State v. Anderson*, 308 N.W.2d 42 (Iowa 1981). The extended discussion in these opinions need not be repeated. We simply set out part of the medical testimony concerning the injury suffered by the victim.

Dr. Boggs testified that in his initial examination of the victim he saw contusions and bruises near the opening of the vagina, a laceration extending from the vagina to the rectum or anus, and a large blood clot protruding through the vagina. Further examination was postponed because of severe pain.

The victim was taken to surgery and given a general anesthetic. At that time, the doctor observed "a laceration or tear which involved almost the entire length of the back wall of the vagina," which went

up behind the mouth of the womb. Surgical repair was performed by Dr. Boggs. He removed a blood clot from the victim's vagina. He said she suffered a lesion extending from the back wall of the vagina to the anus. She suffered substantial loss of blood. During surgery, "the vagina was reconstructed and the perineum, the body between the vagina and the rectum, was repaired." Dr. Boggs said the victim's wounds "put her in great jeopardy." He testified she suffered a substantial risk of death through hemorrhaging. There was also a risk of death from peritonitis and from septicemia. Fortunately, neither of these conditions developed. The doctor also expressed the opinion that there was potential for serious and permanent internal scarring, but that this had not yet been determined.

The injuries here were more severe and death-threatening than in either *McKee* or *Anderson.* As noted in *Anderson,* each case must be judged on its own facts when deciding if there has been a "serious injury." 308 N.W.2d at 47. We find a wealth of evidence from which a jury could find a serious injury had been inflicted within the meaning of the statute. This issue was clearly one for jury determination.

III. *Alleged Violation of Confidential Relationship of Attorney-Client.*

Defendant argues there was "overwhelming likelihood" that conversations between him and his attorney in the Woodbury County jail were designedly overheard by law enforcement officers. Defendant says this denied him a fair trial and denied him the effective assistance of counsel under the sixth amendment.

The right of privacy between attorney and client is well recognized and jealously guarded. Defendant cites abundant authority in support of this principle. Defendant's trouble is not with the rule but with his proof. Following a hearing on this question, the trial court found there was no evidence to show any law enforcement officer had overheard conversations between defendant and his attorney. It also found

there was no evidence of any attempt to eavesdrop on those conferences.

 Because defendant couches this issue in sixth amendment terms, we make our own evaluation of the facts. *State v. Brown,* 253 N.W.2d 601, 602 (Iowa 1977); *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975). We believe the true rule is expressed in *United States v. Cooper,* 397 F.Supp. 277, 285 (D.C.Neb.1975), where the court said:

> [T]here must be the actual gaining, rather than mere opportunity for gaining, of information relative to a charge against the defendant, and the information must be obtained by the informant from an intrusion into the attorney-client relationship. Prejudice will not be presumed unless the intrusion can be called "gross." Transmittal of the information to the prosecutors is a significant, if not conclusive, factor in determining the grossness of the intrusion. Absent grossness, prejudice must be shown.

 Having failed to show any conversations between attorney and client were overheard, defendant has, of course, also been unable to show transmission of any information to the prosecutor. Accordingly, we find no violation of defendant's constitutional rights.

We find this case is factually unlike the authorities relied on by defendant. *See United States v. Rosner,* 485 F.2d 1213 (2d Cir. 1973) (use of listening device or paid informer violates right of privacy); *State v. Cory,* 62 Wash.2d 371, 382 P.2d 1019 (1963) (sheriff eavesdropped on attorney-client conversations).

IV. *Refusal to Permit Defendant to Depose Dr. Boggs Prior to Trial.*

A defendant may take discovery depositions pursuant to Iowa R.Crim.P. 12. *See State v. Peterson,* 219 N.W.2d 665, 669 (Iowa 1974). Rule 12(5) requires depositions to be taken within thirty days after arraignment unless the time is extended for good cause.

■ Defendant was arraigned in February 1978. His motion to take depositions, filed on August 9, 1978, did not meet the time requirements of the rule. Good cause for extending the time was not shown. Defendant's present complaint is that he wanted to depose Dr. Boggs, the State's medical expert, who had already been deposed once. The motion made no mention of this purpose.

Defendant makes the strange argument that he had good cause for wanting to depose the doctor but could not disclose it without "tipping his hand." Not only did this violate the spirit and purpose of discovery, it also denied the trial court of the opportunity to rule on the real merits of the motion. Defendant can hardly complain because the trial court failed to somehow divine the secret purpose of his belated motion. There was no error in the trial court's ruling.

### V. Jury Selection.

■ At defendant's request, the trial court permitted individual voir dire examination of prospective jurors while other members of the panel were sequestered. Defendant alleges the jury was "tainted" because several of the jurors had ascertained in advance the nature of the charge against the defendant.

The nature of a criminal charge is not hidden from prospective jurors. It is usually the first matter brought to their attention during voir dire. The fact that one or two may have known before voir dire that defendant was charged with sexual abuse does not "taint" them. The process of jury examination is largely within the discretion of the trial court. *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978). We find nothing in the procedure followed in this case which exceeds the trial court's proper exercise of discretion or which gives defendant legitimate cause for complaint.

### VI. Conclusion.

Finding no reversible error in any of the issues raised, we affirm the judgment.

In defendant's brief, counsel cites almost two hundred cases. Only twenty-four of these citations comply with Iowa R.App.P. 14(e) requiring inclusion of the particular page "quoted [from] or relied on." This places on us a research burden which is not ours. We criticized this practice in *State v. Jeffries*, 313 N.W.2d 508, 510 (Iowa 1981). We do so again.

AFFIRMED.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

I concur in the result and all of the opinion except the basis of division I(d). I would hold that the trial court erred in overruling defendant's hearsay objection to the victim's written statement.

The theory of the reciprocal and integrated utterance rule is that statements of one party to a conversation may be admitted without regard to their truth or falsity to show the context in which admissible statements by another party were made. *State v. Hilleshiem*, 305 N.W.2d 710, 712–13 (Iowa 1981). Such showing may be made, however, only when the admissible evidence could not be fully understood out of context. *Id.* The trial court has discretion to refuse the right to make the showing when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *United States v. Kenny*, 645 F.2d 1323, 1340 (9th Cir. 1981); *United States v. Lemonakis*, 485 F.2d 941, 948–49 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974).

In the present case, the officer read a three-page single-spaced handwritten statement of the victim to defendant. When the officer finished, defendant allegedly put his elbows on his knees, cupped his face with his hands and said, "I never meant to hurt her. I'm going to jail for fifty years." The jury was told this reaction followed the officer's reading of the statement. The jury knew the victim's version of the events because she had already testified. The con-

text of defendant's response was thus fixed. It was fully intelligible without the statement being introduced. Putting the written statement into evidence served no legitimate purpose. It was not admissible for any nonhearsay purpose. It would have been admissible in the present circumstances only if defendant asserted it was inconsistent with the victim's trial testimony.

Because the statement was substantially the same as her testimony, and she was fully cross-examined, I do not believe the statement added materially to the State's case. The record is thus sufficient to overcome the presumption of prejudice which arises from the erroneous ruling. *See State v. Trudo*, 253 N.W.2d 101, 107–08 (Iowa 1977), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189.

Therefore I agree the conviction should be affirmed.