STATE of Iowa, Appellee,

v.

**Robert James CÂRTER, Appellant.**

No. 97–2069.

Supreme Court of Iowa.

Nov. 17, 1999.

819

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Paul L. Martin, County Attorney, and Steven D. Tynan, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, CADY, and ANDREASEN,* JJ.

ANDREASEN, Senior Judge.

The defendant claims his trial counsel was ineffective in failing to object to the trial court's response to a jury's question and in failing to move for a judgment of

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

acquittal on the charge of first-degree sexual abuse. Finding no error, we affirm.

## I.  Background Facts and Proceedings.

A review of the record reveals substantial evidence from which the jury could have found the following facts.  On August 25, 1996, a young woman asked an acquaintance, the defendant, Robert Carter, for a ride to a lounge.  The defendant agreed; however, during the car ride he turned off of the main road and stopped the vehicle near a cornfield.  He struck the woman in the head with a metal bar that was approximately twelve inches long.  Attached to the bar were log-type chains and hooks.

The defendant forcibly removed the victim from the car and pulled her by the hair into the cornfield.  He continued to strike her with the metal bar.  The defendant made the victim remove her pants and he vaginally penetrated her.  The defendant then made the victim perform oral sex.

After the sex acts had been completed, the defendant grabbed the victim by the hair and made her walk back to the car. He continued to hit her in the back of the head.  The defendant retrieved something from the vehicle and forced the victim to return to the cornfield.  There he stabbed the victim in the neck with a utility knife, cutting her trachea nearly in half.  The victim pretended to be dead and the defendant left the scene.  The victim then made her way to a nearby house and help was summoned.

The defendant was arrested later that night at his motel room.  Shortly before his arrest, the defendant had washed his shirt, using vinegar in an apparent attempt to destroy evidence.  Evidence implicating the defendant in the crime was found in a search of his motel room.

The defendant was charged with first-degree sexual assault in violation of Iowa Code section 709.2 (1995) and attempted murder in violation of Iowa Code section 707.11.  At trial the State presented a considerable amount of direct and circumstantial evidence of the defendant's guilt. In addition to the victim's identification of the defendant as her assailant, there was DNA evidence linking the defendant, the victim, and the weapons, as well as physical evidence tying the defendant to the crime scene.

After the case was submitted to the jury, the jury sent the court a note inquiring as to when sexual abuse ends.  The State had no objection to the court's proposed response.  Defense counsel indicated he was not entirely satisfied with the answer, but he would not object because he could not think of a better response.

The jury found the defendant guilty on both counts, and he was sentenced to life imprisonment on the sexual abuse charge and an indeterminate term not to exceed twenty-five years on the attempted murder charge.  The defendant appeals only from his conviction on the sexual abuse charge.

## II.  Error Preservation and Scope of Review.

■  Recognizing that error was not preserved below, the defendant argues on appeal that his trial counsel was ineffective in failing to object to the court's response to the jury's question and in failing to move for a judgment of acquittal on the sexual abuse charge.  To prevail on a claim of ineffective assistance, a defendant must show that his counsel failed to perform an essential duty and that prejudice resulted from this failure.  *State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999).  We may affirm if either element is lacking.  *Id.*

■  Since the defendant's claim of ineffective assistance arises from his Sixth Amendment right to counsel, our review is de novo.  *See State v. Westeen*, 591 N.W.2d 203, 207 (Iowa 1999).  Such claims are usually preserved for postconviction relief actions; but where the record is adequate, we will consider them on direct appeal.  *Id.* The present record is suffi-

cient to allow us to determine whether defense counsel was ineffective.

### III. Serious Injury.

■■■ The defendant claims his trial counsel was ineffective in failing to move for a judgment of acquittal on the sexual abuse charge because there was insufficient evidence the victim sustained a serious injury. Iowa Code § 709.2. A "serious injury" means a bodily injury which creates a substantial risk of death. *See* Iowa Code § 702.18.[1] "[A] substantial risk of death means more than just any risk of death but does not mean that death was likely." *State v. Anderson*, 308 N.W.2d 42, 47 (Iowa 1981). If there is a real hazard or danger of death, a "serious injury" is established. *Id.*

The record in this case reveals that Dr. Kathleen Haverkamp treated the victim when she was first admitted to the hospital. She testified the victim had extensive injuries, including multiple head and hand lacerations, and the victim's trachea had been cut in half. The doctor considered the victim's injuries to be serious and characterized the trachea injury as life-threatening because it could compromise the victim's airway.

Dr. Allgood, the surgeon who operated on the victim, testified that the laceration to her neck had partially transected her airway and there was a life-threatening possibility that she could lose the ability to breathe. It was his opinion that the victim needed emergency surgical intervention to save her life. The victim required a tracheostomy tube while in the hospital.

The defendant argues no witness gave an opinion as to the victim's "percentage chance of death" or what "possibility of death was certain." He alleges this case lacks the medical detail of past cases in which we have found a serious injury. We

disagree. We have previously held that each case must be judged on its own facts when deciding if there has been a serious injury. *State v. Coburn*, 315 N.W.2d 742, 748 (Iowa 1982). There was sufficient evidence to establish that the injury to the victim's trachea created a substantial risk of death, and trial counsel did not breach an essential duty in declining to move for a judgment of acquittal on this element of the sexual abuse offense.

### IV. Iowa Code Section 709.2—"In the Course of."

■■■ The defendant claims that even if the victim did sustain a serious injury to her trachea, his counsel was ineffective in failing to move for a judgment of acquittal based upon the State's failure to prove that the victim sustained the serious injury "during the commission of" the sexual abuse.[2] The defendant contends the injury occurred *after* the completion of the alleged sex acts and therefore could not elevate his offense to first-degree sexual abuse under Iowa Code section 709.2. In response, the State argues the requirement that the serious injury occur "in the course of" the sexual abuse is satisfied when the injury is sustained immediately before or after the sex act.

Our analysis begins with the statutory language. Section 709.2 provides:

A person commits sexual abuse in the first degree when in the course of committing sexual abuse the person causes another serious injury.

It does not appear we have previously addressed whether the phrase "in the course of" requires that the actual infliction of a serious injury occur simultaneous with the commission of the sexual abuse. However, a review of our prior interpretations of similar phrases provides some assistance. For example, we have previously

---

1. The State concedes it did not attempt to prove any of the alternative definitions of "serious injury" found in section 702.18.

2. The trial court, using Iowa's Uniform Criminal Jury Instruction 900.1, instructed the jury that the State must prove that "during the commission of sexual abuse, the defendant caused [the victim] a serious injury."

recognized that the phrase "during the commission of" in Iowa's statute prohibiting the nonconsenual termination of a pregnancy requires that there be a temporal nexus or link between the underling felony and the termination of the pregnancy. *See State v. Hippler,* 545 N.W.2d 568, 570–71 (Iowa 1996). We similarly conclude that the words "in the course of" in section 709.2 require that there be a temporal nexus or link between the serious injury and the sexual abuse.

Even though we have determined that there must be a nexus between the serious injury and the sexual abuse, the question still remains whether the serious injury must occur simultaneously with the infliction of the sexual abuse. For guidance on this issue we look to our prior interpretations of an earlier version of Iowa's felony-murder rule. In *Conner v. State,* 362 N.W.2d 449, 452 (Iowa 1985), we observed that a murder occurred "in the perpetration" of a felony if it was incident to and associated with the felony "as part of an unbroken chain of events or as part of one continuous series of acts connected with each another." We also have rejected the argument that the murder had to be contemporaneous with the felony. *State v. Conner,* 241 N.W.2d 447, 464 (Iowa 1976).

Reviewing the entirety of a sequence of events is not new. For example, we have previously declined to impose rigid time or geographic limitations when determining if a defendant's subsequent assaultive behavior was in the furtherance of an escape and therefor elevated a theft to the offense of robbery. *See State v. Terry,* 544 N.W.2d 449, 452 (Iowa 1996); *State v. Jordan,* 409 N.W.2d 184, 186 (Iowa 1987). Such an approach is consistent with Iowa Code section 702.13 which provides that a crime commences with the first act directed toward the commission of the crime and ends with the perpetrator's capture or elusion of pursuers. *See State v. Tillman,* 514 N.W.2d 105, 109 (Iowa 1994).

Other jurisdictions have rejected arguments similar to those made by the defendant. For example, the North Carolina Supreme Court has held the serious injury element is sufficiently established if there is "a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury." *State v. Blackstock,* 314 N.C. 232, 333 S.E.2d 245, 252 (1985). Such incidents include injuries inflicted to overcome a victim's resistance and to obtain submission, injuries inflicted in an attempt to commit or further a sexual offense, and injuries inflicted for the purpose of concealing the crime or to aid in an assailant's escape. *Id.*

The Missouri Court of Appeals has held the display of a dangerous weapon "in the course of" rape or sodomy need not occur simultaneously with the sexual offense. *State v. Gray,* 895 S.W.2d 241, 244 (Mo.Ct. App.1995). As long as the use of the weapon "was part of the whole single transaction" which constituted the aggravated form of rape or sodomy, the elevation of the offense to a class A felony was appropriate. *Id.* The Missouri court held that it was "[t]he totality, and not the piecemeal, of the transaction or occurrence" which must be viewed to determine the issue. *Id.* at 245.

We think the analysis in these cases and in our prior felony-murder cases is persuasive. We hold that under Iowa Code section 709.2 the serious injury need not occur simultaneously with the commission of the sexual abuse in order to constitute first-degree sexual abuse under Iowa Code section 709.2. It is sufficient if the serious injury precedes or follows the sexual abuse as long as the injury and sexual abuse occur as part of an unbroken chain of events or as part of one continuous series of acts connected with one another. There was substantial evidence in the record that the defendant's act of cutting the victim's throat occurred as part of the entirety of a continuous series of acts involving the sexual abuse. Trial counsel breached no duty in declining to move for a judgment of acquittal on this basis.

## V. Response to Jury Question.

In his final argument the defendant claims his counsel should have objected to the trial court's response to the question the jury sent to the judge. During its deliberations the jury sent a note to the judge with the question: "Does sexual abuse end when the sex act ends?" The court responded: "Not necessarily. It depends if the subsequent actions occur as part of a continuing course of action." The defendant contends the jury's question indicates it was troubled by its responsibility to determine whether a serious injury was caused by the sexual abuse, and he claims the court's response allowed the jury to find there was a serious injury without requiring it to find a causal connection between the injury and the sex act.

The court's answer directed the jury to consider whether there was a "continuing course of action." This response was sufficiently consistent with our holding in this opinion. Counsel did not err in acquiescing in the trial court's response to the jury's question.

**AFFIRMED.**