# IN THE COURT OF APPEALS OF IOWA

No. 14-1707
Filed December 23, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSHUA MICHAEL CORWIN,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Muscatine County, Mary E. Howes,

Judge.


        Joshua Corwin appeals his convictions for first-degree sexual abuse,

willful injury, and second-degree theft.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant

Appellate Defender, for appellant.

        Joshua M. Corwin, Anamosa, appellant pro se.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Sheryl A.

Soich, Assistant Attorney General.


        Considered by Vogel, P.J., Bower, J., and Miller, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BOWER, Judge.**

Joshua Corwin appeals his convictions for first-degree sexual abuse, willful injury, and second-degree theft. He claims there is insufficient evidence to support his conviction for first-degree sexual abuse and trial counsel was ineffective. In a separate pro se brief, Corwin raises other issues relating to the evidence used at trial, the judge, the prosecutor, and his trial counsel. We affirm Corwin's convictions and preserve his ineffective-assistance claim for potential postconviction-relief proceedings.

## I.      BACKGROUND FACTS AND PROCEEDINGS

Alicia Price and Corwin had been in a four year relationship when Price broke up with Corwin in early May 2013. He subsequently moved out of their shared residence.

Several days later, on May 14, Price was sitting on a couch in her living room talking and texting on her phone when she heard someone run up the outside stairs. Moments later, Corwin kicked in or flung open the door to the residence. Corwin was extremely agitated and was "yelling and screaming things." He kicked over the coffee table and forced himself on top of Price. He "started punching side to side on [her] head and . . . face." After punching Price in the head multiple times, Corwin stood up and kicked her in the head. He also punched a hole in the wall. Corwin grabbed Price's hair and pulled her around the residence. During the incident, Price recalled Corwin stating "why was I doing this, that it was my fault, that his friends were saying that I was driving by their houses waving, if my kids were there, that my kids probably weren't there."

Corwin asked about Price's children and remarked they likely were not home. Corwin went into the children's room and "grabbed up [the] youngest daughter and, like, held her, not all the way in his arms but, like, while she was on the bed, and he would say, like, see what I did." Price assumed Corwin meant she did this "by leaving him, not answering calls, returning all the calls."

After lingering in the children's room, Corwin and Price went into her bedroom. Corwin shut and locked the door. Price testified she was "really scared" at this point. Corwin yelled at Price and pulled her hair. He said he was sorry "but it was [her] fault." He announced they were going to have sex, but Price declined. Corwin removed his clothing, hit Price on the chest and tore her shirt. He removed her clothing and pushed her into the corner against the wall. Price was nauseous and felt significant pain from her head and face. Corwin straddled Price and inserted his penis in her vagina. Corwin forced Price to change positions multiple times. Price complied because she felt she did not have a choice.

After the sexual assault, Corwin dressed and retrieved clothing for Price. Corwin then laid on the bed and smoked a cigarette. Price suggested they leave the residence and go to his mother's house. Price was "really scared" and "really hurt." Price knew if she wanted to leave she had to suggest a place Corwin would go. Corwin called his mother and confirmed they could go to her house. Corwin took Price's phone and told her he would keep it. Price told Corwin she was going to put a basket of clothes in the car. Corwin partially followed Price as she went to the car. Price put the clothes basket in the car, started the car, and

"took off." She drove until she came upon "someone's house." Price stopped the car and pounded on the front door. The residents of the home did not know Price. They described her appearance as "somebody[ ] at a costume party. [Her] eyes looked purple, and there was a redness to [her] eyes." Upon opening the door, they noticed Price was bleeding from her eyes. Price said "[H]elp me help me," and appeared very upset. She was crying and hysterical. Price told the residents someone had broken into her home and might be following her. They called 911. An ambulance arrived shortly thereafter and took Price to a local hospital.

Dr. Stephanie Burrows examined Price at the hospital. Burrows testified upon examining Price she found:

> [Price] had a significant amount of soft tissue swelling around her right eye. There were lacerations present. There's also an examination of her right eye. She had what's called a subconjunctival hemorrhage, which is acute blood in, like, the white part of the eye, so that it's almost like a bruising of the conjunctiva, the white part of your eye. I also noticed bruising on her extremities, as well as back.
> . . . .
> [H]ead injuries can cause long-term deficits and problems for the patient. You can have problems with constant headaches, fatigue, sleep disturbance, ear issues, visual changes, and just kind of affecting your whole kind of quality of life and your ability to kind of go about your normal day.

Burrows diagnosed Price with five acute facial fractures. Burrows concluded Price had suffered a "significant amount of facial and head trauma."

On May 30, 2013, Corwin was charged with sexual abuse in the first degree, in violation of Iowa Code section 709.2 (2013), willful injury, in violation of section 708.4(1), and theft in the second degree, in violation of sections

714.1(4) and 714.2(2). A jury trial began on April 7, 2014. During deliberations, a juror had a medical emergency and had to be excused. One of the alternate jurors, who had been dismissed, was substituted, which resulted in a mistrial. In June, the State amended the trial information to add habitual offender status to each charge.

A second jury trial began on June 23, 2014. Corwin called multiple witnesses and also testified. Corwin testified that prior to his arrival at Price's house, he stole a car at a Kwik Shop convenience store. The car had been left running in front of the building. Corwin reasoned he stole the car because it "beat[ ] walking." He was motivated to go to Price's residence because he assumed Price was with another man. Once he arrived at the residence, he testified he saw "a work truck, a man's truck." He remembered being upset as he entered the residence. He admitted to hitting Price four to six times because he was angry and jealous. He also kicked her and knocked over the coffee table. Corwin then testified Price apologized to him, told him she loved him, and told him she wanted to work things out. Price asked Corwin to stay and "to cuddle" with her. Corwin noted he never pulled her hair or kicked her in the face. Corwin did not go into the children's bedroom, as he thought the kids were not home. Price and Corwin went to the bedroom and cuddled, which, after approximately thirty minutes, turned into a sexual encounter. Afterwards, Price suggested going to Corwin's mother's house (ostensibly to protect Corwin from "going to jail" for the car theft). As Corwin searched the residence for a phone, Price "bolted

out the door." Corwin went to his mother's apartment without Price. He left the stolen car a short distance from the apartment, as the car was out of gas.

The jury found Corwin guilty on all three counts. The State dismissed the habitual offender enhancements. Concerning the sexual abuse charge, the district court sentenced Corwin to life in prison without the possibility of parole. For the willful injury charge, Corwin was sentenced to an indeterminate term of ten years. For the theft charge, Corwin was sentenced to an indeterminate term of five years. The sentences were set to run concurrently.

Corwin appeals from this judgment and sentence.

## II.      STANDARD OF REVIEW

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). We are to determine whether the evidence could convince a rational trier of fact that the defendant is guilty of the crime beyond a reasonable doubt. *Id.* In doing so, we view the evidence in the light most favorable to the State. *Id.* If sufficient evidence supports the verdict, we will affirm. *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). The State has the burden of proving "every fact necessary to constitute the crime with which the defendant is charged, and the evidence presented must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address

the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims of ineffective assistance of counsel de novo. *Id.* This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

## III. MERITS

### A. Sufficiency of the Evidence

Corwin claims the district court erred in failing to grant his motion for judgment of acquittal because there was insufficient evidence to establish he seriously injured Price in the course of committing sexual abuse. The jury received the follow instructions:

> The State must prove all of the following elements of Sexual Abuse in the First Degree under Count I:
> 1. On the 14th or 15th day of May, 2013, the defendant performed a sex act with Alicia Price.
> 2. The defendant performed the sex act by force or against the will of Alicia Price.
> 3. During the commission of sexual abuse, the defendant caused Alicia Price a serious injury.
> If the State has proved all the elements, the defendant is guilty of Sexual Abuse in the First Degree. If the State has failed to prove any one of the elements, the defendant is not guilty of Sexual Abuse in the First Degree and you will then consider the charge of Sexual Abuse in the Second Degree as explained in Instruction No. 19.[1]

The jury was also instructed "[t]he term 'during the commission of sexual abuse' . . .means that the State must prove the serious injury and the sexual

---

[1] This instruction is derived from Iowa Code section 709.2, which provides: "A person commits sexual abuse in the first degree when in the course of committing sexual abuse the person causes another serious injury." "In the course of" and "during the commission of" are generally interchangeable phrases. *See State v. Carter*, 602 N.W.2d 818, 821–22 (Iowa 1999) (equating "during the commission of" with "in the course of").

abuse occurred as part of an unbroken chain of events or as part of one continuous series of acts connected with one another."

Corwin claims a break occurred between the "serious injury" and the "sexual abuse," therefore the "serious injury" was not caused "during the commission of the sexual abuse." He notes, since the State's evidence failed to establish a temporal nexus or link between the acts causing the serious injury and the sexual abuse, his conviction for sexual abuse in the first degree should be reversed. In demonstrating a break occurred, Corwin points to the period where he went in the children's room and interacted with the youngest child.

Our supreme court analyzed Iowa Code section 709.2 in *State v. Carter*. 602 N.W.2d at 821. The court summarized the "serious injury" and "sexual abuse" in the following fashion:

> [A] young woman asked an acquaintance, the defendant, Robert Carter, for a ride to a lounge. The defendant agreed; however, during the car ride he turned off of the main road and stopped the vehicle near a cornfield. He struck the woman in the head with a metal bar that was approximately twelve inches long. Attached to the bar were log-type chains and hooks.
> The defendant forcibly removed the victim from the car and pulled her by the hair into the cornfield. He continued to strike her with the metal bar. The defendant made the victim remove her pants and he vaginally penetrated her. The defendant then made the victim perform oral sex.
> After the sex acts had been completed, the defendant grabbed the victim by the hair and made her walk back to the car. He continued to hit her in the back of the head. The defendant retrieved something from the vehicle and forced the victim to return to the cornfield. There he stabbed the victim in the neck with a utility knife, cutting her trachea nearly in half. The victim pretended to be dead and the defendant left the scene. The victim then made her way to a nearby house and help was summoned.

*Id.* at 820.

The defendant claimed the serious injury (cutting the victim's trachea) did not occur in the commission of the sexual abuse. *Id.* at 821. Our supreme court disagreed and held:

> We hold that under Iowa Code section 709.2 the serious injury need not occur simultaneously with the commission of the sexual abuse in order to constitute first-degree sexual abuse under Iowa Code section 709.2. It is sufficient if the serious injury precedes or follows the sexual abuse as long as the injury and sexual abuse occur as part of an unbroken chain of events or as part of one continuous series of acts connected with one another.

*Id.* at 822.

Here, Corwin admitted he was angry and jealous as he entered Price's residence. He admitted to hitting her multiple times. The evidence and testimony presented by Dr. Burrow demonstrates Corwin's acts caused five acute fractures to Price's face. Price testified that after the beating Corwin pulled her around the residence by her hair. Then, according to Price, he briefly went in the children's room and picked up the youngest child (according to Corwin's testimony he did not enter the children's room or know they were there until he was about to leave). Afterwards, he forced Price into her room, assaulted her further, and eventually raped her. Viewing the evidence in the light most favorable to the State, there is substantial evidence to demonstrate the acts causing the "serious injury" and the "sexual abuse" occurred "as part of an unbroken chain of events." A rational trier of fact could conclude, based on the evidence submitted, Corwin was guilty beyond a reasonable doubt of first-degree sexual abuse. We affirm Corwin's conviction.

### B. Ineffective Assistance

Corwin claims his trial counsel was ineffective for failing to adequately challenge the sufficiency of the evidence establishing the second-degree theft charge. Specifically, Corwin claims the State did not present sufficient evidence to show he intended to permanently deprive the owner of his property.

"Although claims of ineffective-assistance-of-counsel are generally preserved for postconviction-relief proceedings, we will consider such claims on direct appeal where the record is adequate." *State v. Horness*, 600 N.W.2d 294, 297 (Iowa 1999). Upon our review of the record, we find it inadequate to address Corwin's ineffective-assistance-of-counsel claims on direct appeal and preserve these claims for potential postconviction-relief proceedings. *See Straw*, 709 N.W.2d at 133; *see also State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned.").

### C. Pro Se Issues

Corwin filed a pro se brief, in which he raises issues with the evidence presented at trial, the effectiveness of his trial attorney, the conduct of the prosecuting attorney, and the conduct of the district court judge. His brief does not comply with the rules of appellate procedure in a number of ways, including not addressing error preservation, standard of review, or citing any authority. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). We find his arguments waived and without merit.

**IV.    CONCLUSION**

We find substantial evidence supports Corwin's conviction for first-degree sexual abuse because the "serious injury" and "sexual abuse" occurred in the same "unbroken chain of events."  We find the record inadequate to address Corwin's ineffective-assistance claim and preserve it for potential postconviction-relief proceedings.  Finally, we find Corwin's pro se arguments waived.

**AFFIRMED.**