# IN THE COURT OF APPEALS OF IOWA

No. 16-1118
Filed May 17, 2017

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**CORNELIUS TYRONE BROWN,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.


　　　　A defendant appeals his convictions of sexual abuse in the second degree and false imprisonment. **AFFIRMED.**


　　　　Mark C. Smith, State Appellate Defender, and Stephan P. Japuntich, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.


　　　　Considered by Vaitheswaran, P.J., Tabor, J., and Blane, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**BLANE, Senior Judge.**

Defendant Cornelius T. Brown appeals his convictions of Count I, sexual abuse in the second degree, in violation of Iowa Code section 709.3(1) (2015), and Count II, false imprisonment, in violation of Iowa Code section 710.7. Brown first contends that the trial court failed to grant his motion for judgment of acquittal as to Count I, asserting the State failed to present sufficient evidence he used force creating a substantial risk of death or serious injury, an element of that crime. Second, Brown claims the trial court erred in assessing financial obligations without making a constitutionally mandated determination of his reasonable ability to pay. Finally, Brown contends his trial counsel was ineffective. Based upon our review, we find Brown's contentions are without merit and affirm.

## I. *Factual and procedural background.*

On June 20, 2015, twenty-four-year-old N.H. got off work about 9:00 p.m. from Foot Locker in Waterloo, returned to her apartment, and went to bed. Like the district court, we credit her account of what followed. Around midnight, after falling asleep, she awoke to knocking at her front door. When she answered the door, N.H. found twenty-four-year-old Brown standing there. N.H. had known Brown since ninth grade. They attended Waterloo East High School together, and Brown is a close friend of N.H.'s brother, Vincent. N.H.'s parents knew Brown, and he was always welcomed at their home. She characterized Brown as being a "good friend" with whom she had neither been romantically involved nor had a prior sexual relationship. N.H. had not been expecting Brown that night and had not invited him to her residence.

Brown asked to use N.H.'s bathroom. Although she thought the request unusual, N.H. let Brown in. After using the restroom, Brown sat down next to N.H. on her bed and started asking her why she wouldn't be his girlfriend. N.H. reaffirmed that she was not interested in him that way, at which Brown became angry and started hitting her. Next, he took her cell phone and would not give it back. Then Brown started punching N.H. in the face with a closed fist while he pulled her hair. N.H. noted Brown smelled of alcohol.

N.H. and Brown struggled, landing on the floor, where he placed an arm around her throat and began choking and strangling her. N.H. was able to get away to the bathroom, grabbed a bottle of "Scrubbing Bubbles" bleach solution, and sprayed Brown in the face and eyes, which made him angrier. Brown shoved N.H. into the bathtub and started choking her again. He eventually dragged her back to the bedroom, where he punched her more. N.H. managed to briefly escape the apartment, running across the hall to a neighbor's door and knocking for help, but no one answered.

Brown, who is six feet tall and weighs 230 pounds, pulled N.H., who stands four feet, eleven inches, back into the apartment by her hair and into the bedroom, where he forced his mouth onto her genitals. N.H. could feel the burn of the bleach she had sprayed on Brown's face while his mouth touched her vagina. She struggled and kicked his face, which again made Brown angrier. He continued to punch her.

Neighbors began banging on N.H.'s apartment door and demanded to see N.H. Brown made N.H. walk to the door with him, and he told the neighbors that everything was fine. Brown took N.H. back to the bedroom and told her he would

leave if she "would just let him eat [her] pussy." The escalating violence led N.H. to think that she "was gonna die," and she pled with Brown to give back her cell phone so she could talk to her son one last time. When Brown gave her the phone, N.H. "bolted" from the apartment, ran to a neighbor's apartment, and called her parents. A few minutes later, N.H. saw her father's truck and a Waterloo police car pull up to the apartment building. N.H. ran outside to them, screaming and crying.

Officers went looking for Brown and found he had locked himself inside N.H.'s apartment. Police forced open the door and eventually found Brown hiding inside a closet. Brown admitted to police that he had punched N.H. in the face and head with his closed fist. He also said that he knew that he hurt N.H. "very bad" and saw her crying and bleeding. Brown also admitted that N.H. "was scared" and "knew she was in fear for her life" and "thought she was gonna die."

At trial, N.H. testified that while Brown was choking her, she had clenched her teeth to be able to breathe. Also, the second time Brown choked her, she described "it felt like somebody was trying to rip the life out of my throat." N.H. recounted her injuries: bruising; two black eyes; lots of scratches on her hands, face, mouth, and throat; "knots" on her face; and a stiff neck. N.H. could not eat for days "because [her] jaw was locked" and wouldn't open due to injuries suffered during the attack. N.H.'s parents also reported that some of her hair was missing, presumably ripped out by Brown during the attack.

Brown was charged by trial information on June 29, 2015, with the offenses of Count I, sexual abuse in the second degree, in violation of Iowa Code section 709.3(1), and Count II, false imprisonment, in violation of Iowa Code

section 710.7. On December 14, 2015, Brown filed a waiver of jury trial. The matter proceeded to a bench trial on December 14, 2015. At the close of the State's case-in-chief, Brown moved for a judgment of acquittal. He argued that he was entitled to a directed verdict on the sexual-abuse-in-the-second-degree charge as the State had failed to present sufficient evidence that he used or threatened to use force creating a substantial risk of death or serious injury to N.H. The trial court denied the motion.

On December 18, 2015, the district court filed its findings of fact and conclusions of law, finding Brown guilty of second-degree sexual abuse and false imprisonment. On January 25, 2016, Brown filed motions for new trial and in arrest of judgment. The district court heard the motions on May 2, 2016. On May 17, 2016, the court denied the post-trial motions. On June 27, 2016, Brown was sentenced to serve twenty-five years on Count I, sexual abuse in the second degree, and one year on Count II, false imprisonment. At sentencing, the district court found Brown reasonably able to pay and ordered restitution, including a $315.00 fine and 35% surcharge on Count II, a $250 penalty pursuant to Iowa Code section 692A, a $100 surcharge pursuant to Iowa Code section 911.2B, and then-unknown amounts for pecuniary damages and court costs. On June 27, 2016, Brown filed his notice of appeal.

II.     *Sexual Abuse in the Second Degree.*

A.  *Standard of review.*

We review a challenge to the sufficiency of the evidence for the correction of errors at law. *State v. Keopasaeuth,* 645 N.W.2d 637, 639–40 (Iowa 2002). "The court views the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* at 640. A verdict

will be upheld if it is supported by substantial evidence. *State v. Sanford,* 804 N.W.2d 611, 615 (Iowa 2012). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* We consider all of the evidence in the record not just the evidence supporting the verdict. *State v. Dalton,* 674 N.W.2d 111, 116 (Iowa 2004).

*State v. Lane*, No. 14-1449, 2015 WL 8388361, at *6 (Iowa Ct. App. Dec. 9, 2015).

### B. Discussion.

Brown challenges the sufficiency of the evidence as to one element of the crime under which he was convicted. Under section 709.3(1), a person commits sexual abuse in the second degree when "[d]uring the commission of sexual abuse the person . . . uses or threatens to use force creating a substantial risk of death or serious injury to any person." He contends the State failed to prove that he "use[d] . . . force creating a substantial risk of death or serious injury" while committing sexual abuse. Therefore, he argues he could not be convicted of sexual abuse in the second degree, a class "B" felony, and should have only been convicted of sexual abuse in the third degree, a class "C" felony. Since the trial court found Brown used force creating a substantial risk of death or serious injury, our inquiry is whether the evidence in the record supports the trial court's finding. *See State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015).

The State is not required to prove N.H. suffered a serious injury. *See State v. Howard,* 284 N.W.2d 201, 202 (Iowa 1979). *Compare* Iowa Code § 709.3 (defining sexual abuse in the second degree, which requires only "use[ ] or threat[ ] to use force creating a substantial risk of death or serious injury to any person") *with* § 709.2 (defining sexual abuse in the first degree to require finding

of "serious injury"). We accordingly need not make a determination whether the injuries sustained fall within the definition of "serious injury" found in Iowa Code section 702.18. The relevant inquiry is whether the force used created a substantial risk of death or serious injury.

> "Serious injury" means any of the following:
> a. Disabling mental illness.
> b. Bodily injury which does any of the following:
> (1) Creates a substantial risk of death.
> (2) Causes serious permanent disfigurement.
> (3) Causes protracted loss or impairment of the function of any bodily member or organ.

Iowa Code § 702.18.

> While a substantial risk of death means more than any risk of death, death does not need to be the likely result of the injury. *State v. Carter,* 602 N.W.2d 818, 821 (Iowa 1999); *see State v. Anderson,* 308 N.W.2d 42, 46–47 (Iowa 1981) (defining "substantial" for term "substantial risk of death" as "generally mean[ing] real, important, not illusive"). If a real hazard or danger of death exists, a "serious injury" is established. *Carter,* 602 N.W.2d at 821. Medical certainty as to a victim's percentage chance of death is not necessary; for each case, the trier of fact must consider the facts present when deciding whether the victim sustained a serious injury. *See id.* (finding defendant inflicted serious injury by causing extensive injuries including cutting victim's trachea in half); *Anderson,* 308 N.W.2d at 47 (finding eighty-five-year-old woman who suffered two broken ribs, as well as bruises on her body and head faced substantial risk of death).

*State v. Triplett*, No. 11-1528, 2012 WL 4900468, at *2 (Iowa Ct. App. Oct. 17, 2012).

In *Howard,* our supreme court addressed the same issue in a similar case and held "[e]vidence of the victim's lacerations, sprains, and bruises justified [the] trial court's finding that defendant used force which created a substantial risk of serious injury." 284 N.W.2d at 202-03. Compromising a victim's airway creates a substantial risk of death. *Carter*, 602 N.W.2d at 821. Brown threw numerous

punches to N.H.'s head and face with a closed fist and choked N.H. on two separate occasions. This is sufficient evidence of use of force that created a substantial risk of serious injury or death.[1] A "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The trial court properly denied Brown's motion for judgment of acquittal and entered conviction for sexual abuse in the second degree.

### III. *Assessing financial obligations.*

#### A. *Standard of review.*

Restitution issues are generally reviewed for errors at law. *State v. Jenkins*, 788 N.W.2d 640, 642 (2010). Constitutional issues are reviewed de novo. *State v. Dudley*, 766 N.W.2d 606, 626 (Iowa 2009). (citation omitted).

#### B. *Discussion.*

Brown contends that the trial court erred in finding he had the reasonable ability to pay financial obligations. He argues the record shows he does not have such ability and the sentencing judge failed to make any inquiry as to his ability to pay any financial obligations. Brown urges that the judgment as to financial obligations should be reversed and remanded for a factual determination of his reasonable ability to pay the obligations.

---

[1] The State also argues that N.H. suffered a serious injury because following the attack her jaw was "locked" and she could not eat for several days. In light of the other evidence supporting the use of force that created a substantial risk of death or serious injury, we do not need to address the "locked" jaw.

The State contends that since the trial court did not order restitution of a specific amount of pecuniary damages, Brown's appeal is premature.[2] *See State v. Kemmerling*, No. 16-0221, 2016 WL 5933408, at *1 (Iowa Ct. App. Oct. 12, 2016) ("Because the total amount of restitution had not yet been determined by the time the notice of appeal was filed, any challenge to the restitution order in this case is premature."); *State v. Martin*, No. 11-0914, 2013 WL 4506163, at *2 (Iowa Ct. App. Aug. 21, 2013) ("We find, because no restitution order is yet in place, Martin's challenge is premature."); *State v. Wilson*, No. 00-0609, 2001 WL 427404, at *3 (Iowa Ct. App. Apr. 27, 2001) ("We cannot address this issue at this time because no plan of restitution was completed at the time Wilson filed his notice of appeal and the record before us on appeal contains no court order dictating a plan for payment of restitution.").

Brown concedes that there are "as of yet unknown amounts for pecuniary damages and court costs." The Iowa Supreme Court has held that a plan of restitution is necessary before there is a basis to appeal from an order imposing financial obligations:

> [W]e have established two principles that preclude us from granting relief to defendant in this regard. First, it does not appear in the present case that the plan of restitution contemplated by Iowa Code section 910.3 was complete at the time the notice of appeal was filed. Until this is done, the court is not required to give consideration to the defendant's ability to pay. Second, Iowa Code section 910.7 permits an offender who is dissatisfied with the amount of restitution required by the plan to petition the district court for a modification. Unless that remedy has been exhausted, we have no basis for reviewing the issue in this court.

---

[2] The relevant order left specific values for another date.

*State v. Jackson,* 601 N.W.2d 354, 357 (Iowa 1999) (citations omitted). In the present case, the trial court had not yet entered a plan of restitution that would trigger the trial court's obligation to determine Brown's reasonable ability to pay. Brown's appeal from the current order is premature.[3] For this reason, we have no basis to address this issue further.

### IV.    *Ineffective Assistance of Counsel.*

### A.  *Standard of Review.*

We review claims of ineffective assistance of counsel de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

### B.  *Discussion.*

Brown's counsel sets out an extensive statement of the law governing ineffective assistance of counsel and then states: "Should this Court deem any issues waived, Mr. Brown respectfully requests that this Court proceed on a claim of ineffective assistance of counsel. There exists no explanation of strategic or tactical considerations." Brown makes no argument as to how his trial counsel was ineffective. Because no issues were waived, we decline to address Brown's claim. Brown's ineffective-assistance-of-counsel claims are nevertheless preserved for postconviction relief.

### V.    *Conclusion.*

Having considered all of Brown's issues, we find no error and affirm.

**AFFIRMED.**

---

[3] We note that our recent case of *State v. Kurtz*, 878 N.W.2d 469, 472–73 (Iowa Ct. App. 2016) cited by defendant is distinguishable, as in *Kurtz* we found that the trial court had included in its order a plan of restitution which required the trial court to make a determination of Kurtz's reasonable ability to pay.